

777 E WISCONSIN AVE
MILWAUKEE, WI 53202-5306
414.271.2400 TEL
414.297.4900 FAX
FOLEY.COM

WRITER'S DIRECT LINE
414.319.7324
kjelenchick@foley.com

March 28, 2025

Hon. Arun Subramanian
United States District Judge
South District of New York
500 Pearl Street, Courtroom 15A
New York, NY 10007

**RE: *Kohler Co. v. Signature Plumbing Specialties LLC*, Civil Case No. 1:23-cv-09686-AS (S.D.N.Y.)**



Dear Judge Subramanian:

We write on behalf of Kohler Co. ("Kohler") to seek the Court's assistance to compel Signature Plumbing Specialties LLC ("Signature") to produce limited financial information in furtherance of the parties' efforts to explore a commercial resolution and to enable Kohler to make a good-faith and informed settlement demand. Kohler also seeks permission to depose Signature principal, Keith Kugler, about this information during his April 3, 2025 deposition, or any continuance thereof, so that Kohler can evaluate the viability of settlement.

Indeed, during the January 8, 2025 conference, the Court ordered Signature to provide Kohler with the "volume and total revenue for the accused products, and not just the specific products that are identified in the infringement contentions but those specific products and any alternate SKUs of substantially similar configuration." (Dkt. No. 79 at 11:14-18; *see also* Dkt. No. 78 ("Signature should also produce to Kohler the damages information addressed at the hearing.").) Signature has failed to comply with the Court's order. Instead, and only after multiple inquiries from Kohler, Signature provided two spreadsheets compiled by its counsel with self-selected data that lacks the Court-ordered information. Given the missing information, Kohler sought clarification about the data so that it could tailor an appropriate settlement demand, but Signature steadfastly refused to supplement the piecemeal "summaries."

In an effort to avoid burdening the Court with motion practice over this deficiency, Kohler, nevertheless, prepared and served Signature with its good-faith settlement offer based on the information it could glean from Signature counsel's spreadsheets. In response, Signature simply criticized Kohler's compromise offer based on profitability information Kohler requested—and Signature previously refused to provide—and refused any further efforts to explore resolution.

These events magnify the importance of having credible financial information from Signature so that the parties can evaluate the possibility of settlement before summary judgment motion practice on Signature's validity challenges. For this reason, Kohler is left with no other choice than to accept the Court's invitation to seek its assistance if Kohler has "any issues that come up in terms of the production of [Signature's financial] information." (Dkt. No. 79 at 44:3-5.)

Pursuant to this Court's Individual Practices Rule 5, Lead Trial Counsel for the parties met, via phone, on Wednesday, March 26, 2025 at 2 pm EDT. The conference lasted thirty minutes. At the end of the conference, which was the culmination of multiple email exchanges beginning shortly after the January 8, 2025 conference with the Court, and at least one prior call on February 10, 2025, the parties agreed that they were at an impasse on these issues.

**1. <u>Signature's Deficient Financial Information</u>**

Below are redacted screenshots of the two Signature attorney-compiled spreadsheets, which were produced on January 29 and February 14, 2025.[1] While the spreadsheets purport to identify

[1] If it would be helpful for the Court's consideration, Kohler can provide the original unredacted spreadsheets.

Signature's "TOTAL SALES," they fail to identify the volume of products sold and the specific "SIMILAR" SKUs as sold (but not publicly advertised), all of which was ordered by the Court.

| January 29, 2025 | |
|---|---|
| CONFIDENTIAL | |
| SALES FROM SEPTEMBER 2023 THROUGH JANUARY 28TH 2025 | |
| MODEL # | TOTAL SALES |
| BT2092 | |
| SIMILAR APRON TUBS | |
| **TOTAL FOR TUBS** | |
| LF1267 | |
| LF1370 | |
| LF1370 | |
| LF1353 | |
| LF1353 | |
| SIMILAR FIXTURES | |
| ALL RIBBON FAUCETS | |
| **TOTAL FOR FAUCETS** | |
| **TOTAL** | |

| February 14, 2025 | |
|---|---|
| CONFIDENTIAL | |
| SALES FROM SEPTEMBER 2023 THROUGH FEB 10TH | |
| MODEL # | TOTAL SALES |
| **'487 Patent - Accused Products** | |
| BT2092 | |
| **Unaccused Products Added at Kohler's Request** | |
| | |
| **'732 Patent - Accused Products** | |
| LF1267 | |
| LF1370 | |
| **Unaccused Products Added at Kohler's Request** | |
| LF1353 | |
| | |
| **'614 Patent - Accused Products & Unaccused Products** | |
| ALL RIBBON FAUCETS | |

Most troubling, the "TOTAL SALES" amounts do not match across the two spreadsheets. In addition, the SKUs that are provided in each spreadsheet are different.

Kohler seeks the units and sales information for each of the accused infringing products as well as any similarly configured products. Signature refuses to provide the listing of relevant SKUs based on criticisms of Kohler's infringement contentions. However, as discussed at the January 8, 2025 conference, Signature is offering for sale and selling additional implicated SKUs that it does not publicly advertise on its website, leaving Kohler in the dark about the complete universe of accused products. Given Signature's opaque business practices and inconsistent spreadsheets, Signature is the only party that knows which products it has sold and under which SKU. Signature's two spreadsheets do little to clarify which additional SKUs (and corresponding sales) are implicated by Kohler's infringement claims. Signature's headings in the spreadsheets are no help either. For example, Signature added rows for "Unaccused Products Added at Kohler's Request." Kohler did not identify these specific SKUs that Signature listed.

Compounding the SKU issue, Signature was resistant to provide sales volume information. In an effort to reach a compromise, Kohler proposed that Signature provide costing or product line profitability information during the parties' February 10, 2025 call. Other than confirming that Signature does not have an easy way to track product, family, or SKU profit margins, no further profitability information was provided during the call.[2]

[2] Signature claims it disclosed the company's estimated overall profitability during the parties' February 10, 2025 call. Signature is wrong—the first Kohler learned of any profitability claim was on March 19, 2025. Counsel for Kohler took detailed notes of the February 10 call and, in follow-up, sent Signature counsel a summary of the same. There was no identification of Signature's estimated profitability. Signature's counsel responded to this summary and was similarly silent on this point. As Kohler seeks a disgorgement of Signature's profits, profitability for the accused products was a notable focus of the call as Kohler was working towards presenting its settlement demand. Given the



FOLEY & LARDNER LLP

**2. Signature's Pattern of Selective Disclosures**

Signature's selective and limited disclosures related to its financial information compound the concerns Kohler has already raised relative to Signature's behavior in this litigation. On March 25, 2025, Kohler learned that Signature was aware of the EU IPO as early as July 15, 2024. This key fact was omitted from Signature's February 6, 2025 Motion to Amend its Invalidity Contentions in an effort to shore up Signature's alleged diligence in uncovering the EU IPO art in question. Signature represented to the Court that it was not until "[a]fter the January 8, 2025 Conference, [that] Signature uncovered two prior art registered designs." (Dkt. No. 84 at 2.) Specifically, Signature claimed that this was "new information provided by Porcelanosa." (*Id.* at 1.) Signature's recent document production lays bare that Signature has been well aware of the EU IPO office since July 15, 2024.

More specifically, on July 15, 2024, counsel for Porcelanosa disclosed to Signature's counsel that "[p]atents can be pulled from the EU Patent Office." (Ex. A.) Porcelanosa even provided the "list of relevant European design patents for the" faucet in question. (*See id.*) The documents Signature produced from the EU IPO database even identify that Signature knew and conducted this search prior to January 2025. (*See* Exs. B-C (highlighted).) On this record, there is no question that Signature knew about the EU IPO database in July 2024 and had months to conduct the necessary and appropriate prior art searches. Waiting until February 3, 2025 to produce this information to Kohler and to seek leave to amend its invalidity contentions is not diligence. Just as important here, Signature's selective disclosures and its failure to comply with the Court's order regarding the production of Signature financial information should not be rewarded by precluding Kohler access to this information.

**3. Kohler Remains Committed to Engaging in Settlement Conversations**

Notwithstanding Signature's failure to comply with the Court's Order, Kohler served a good-faith settlement demand on March 14, 2025. Instead of countering the demand, Signature short-circuited the parties' settlement discussions, criticizing the magnitude of Kohler's proposal as being misaligned with Signature's newly identified profitability across all products it sells. Had Signature provided its financial information as ordered, this critique would have not even been an issue.

Kohler seeks full compliance with the Court's Order to best assess its settlement offer and how, if at all, it should be modified. In addition, Kohler requests permission to probe during the deposition of Mr. Kugler the veracity of the data that has and will be provided. Under the circumstances, Kohler continues to believe that the parties would benefit from a referral to Magistrate Judge Aaron, a proposal that Kohler has made repeatedly (and Signature ignores).

---

significance, Kohler's counsel would recall whether Signature made any type of representation related to the same. Moreover, even having counsel's estimate of Signature's purported profitability as a company says nothing about profitability of the accused products. For design patent infringement damages, Kohler need only offer evidence of Signature's accused products' sales revenues; it is Signature's burden to establish deductible costs and expenses. *See* 35 U.S.C. § 289.



The motion to compel is GRANTED. Signature is hereby ordered to supplement its financial disclosures to Kohler with the units and sales information of each of the accused infringing products as well as any similarly configured products (including SKUs for those products). Kohler may ask Kugler about this financial information at his deposition. On or before April 7, 2025, Signature should respond to Kohler's settlement proposal with a counter, and if it does so, Kohler should respond on or before April 11 with a good-faith counter-proposal. The Clerk of Court is respectfully directed to terminate the motion at ECF No. 88.

SO ORDERED.

Arun Subramanian, U.S.D.J.
Date: April 3, 2025

Respectfully submitted,

/s/ *Kadie M. Jelenchick*
**Kadie M. Jelenchick**

Attorney for Plaintiff Kohler Co.